UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 03-10404-NG |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 1. MICHAEL GRIFFIN, | ) | |
| 3. WILLIAM DAVID VENEY, | ) | |
| 4. RICHARD COLLADO, | ) | |
|        Defendants. | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER

The United States of America, by and through its attorneys
Michael J. Sullivan, United States Attorney for the District of
Massachusetts, and Rachel E. Hershfang and Nathaniel R. Mendell,
Assistant U.S. Attorneys, hereby opposes the motions to sever
filed today (docket no. 162, 166) and last night (docket no. 157)
by defendants Michael Griffin ("Griffin"), David Veney ("Veney")
and Richard Collado ("Collado").  In the motions, each defendant
claims that his defense of his case will be adverse to the
interests of another defendant, and that these antagonistic
defenses require severance.  For the reasons set out below (and
in the government's opposition to Griffin's motion to sever or,
in the alternative, to dismiss [docket no. 112], as well as at
any argument on the matter), the government disagrees.  Although
Griffin and Veney have now described defenses that are at least
partially antagonistic to the interests of the other, the
government submits that these inconsistencies do not rise to a

1

level that requires severance.  When counterbalanced with the
strong and established presumption that co-conspirators sbe tried
together, and the interest in judicial economy and the
administration of justice, the defendants' motions must fail.

**I.    The government's case (as briefly as possible).**

The three defendants have been charged, in a one-count
conspiracy indictment, with cocaine and marijuana trafficking.
The government's evidence is expected to show that, over the
course of years (beginning no later than January, 2000, and
continuing to about April 17, 2002), Frank Fister ("Fister")
employed Griffin and Veney to move cocaine and marijuana from
Fister's source of supply in Texas to the Boston area.

With respect to Collado, the government's anticipated
evidence is that he took a series of trips (approximately four)
to Chicago with Fister, delivering approximately one kilogram of
cocaine on each trip; that he helped Fister sort through and
reject bad-quality cocaine in February and April, 2002; and that
he traveled to Texas with Fister in April, 2002, to purchase a
load of cocaine.

Griffin and Veney did not work together to transport any
single load, and Collado did not transport cocaine or marijuana
cross-country, as Griffin and Veney did.[1]  The three defendants

---

[1] Veney has moved to sever his case from Collado's (docket
no. 162), a motion in which Collado has joined (docket no. 166).
Both efforts are based on what Veney says is an inconsistency in
the government's evidence with respect to a trip in February,

played separate, and crucial, roles in the drug conspiracy.

The government will call three cooperating witnesses to testify at trial. These witnesses represent both ends of the drug-trafficking conspiracy: the distributor (and his worker) in Texas, as well as the bulk purchaser of drugs in Boston. Each of these witnesses is expected to identify Griffin and Veney, and to describe them as transporters of drugs who worked for the Boston-based trafficker. Two of the three (the Texas distributor and the Boston trafficker) will identify Collado and describe his role in reviewing, rejecting, and ultimately returning approximately 54 kilograms of cocaine during the winter and early spring of 2002.

## II. Anticipated proof of particular trips (Griffin, Veney).

The indictment charges a conspiracy. In the course of providing discovery to the defendants over the past two and a half years, the government has provided grand jury testimony and

---

2002. See Veney motion to sever at 2. There is no such inconsistency, and the government respectfully submits that Veney may have misunderstood the government's anticipated proof with respect to this date. The evidence is expected to show that, on or about the weekend of February 15-17, 2002, Veney delivered a 44-kilogram load of marijuana to Fister in Boston. Collado then, with Fister and Mirabal, reviewed both that newly-delivered cocaine and the cocaine that Fister had on hand, as concerns had arisen as to the quality of the cocaine. See Grand Jury testimony of Rodney Mirabal, Bates no. 1125-1126 (in response to a question about which driver delivered a load of cocaine or on about February 16, 2002, Mirabal replied, "And the person who drove the cocaine up from Texas was David." "David Veney," asked the prosecutor. "Yes," Mirabal responded.) This allegation presents no inconsistency as to who was involved, and therefore is no basis for a motion to sever these two defendants' cases.

3

exhibits, as well as numerous records (telephone, credit card, Federal Express, and hotel records, to name a few), and the cooperating defendants' calendars and drug ledgers. Together, these documents indicate increased activity by Griffin or Veney at times that coincide with a notation of a drug delivery to Fister and a drug sale by Rodney Mirabal.

At trial, the government intends to introduce evidence of some (not all) of the drug-delivery trips taken by Griffin and Veney. As is revealed in Fister's and Mirabal's ledgers, there were at least 19 such trips between January, 2000 and April, 2002.

### III. Griffin's and Veney's arguments for severance.

Griffin's argument flows in part from a misapprehension, and in part from an admission that the government has less evidence against him than previously believed. The misapprehension is that evidence presented to the grand jury about trips by certain drivers on certain cases was the whole of the government's case. In fact, as Griffin is aware, the government's case alleges a conspiracy over the course of more than two years. The trips described to the grand jury constitute acts in furtherance of the conspiracy, to be sure, but are not the whole of the case. Thus, the argument that the government's alibi demand "adds dates that have not heretofore been at issue," Griffin Mem. In Support of Motion to Sever ("Griffin Mem.") at 3, misunderstands the

4

conspiracy charge in the case.[2]  A review of the cooperating

defendants' drug ledgers shows drug deliveries on dates that were

not presented to the grand jury.

In its demand for alibi, the government identified Veney as

the driver for two cocaine deliveries (in or about January 18-22,

2001, and March 9-14, 2001) that government witnesses had earlier

attributed to Griffin.  According to Griffin, this change will

cause three changes in his strategy: first, he has alibi evidence

for these dates that he can no longer use, as the government will

not present evidence that he transported drugs on those dates.

Griffin Mem. at 3.  Second, Griffin plans to impeach government

witnesses with their inconsistent testimony about these two

weekends.  Id.  Third, Griffin intends to present "evidence that

there was extensive communication between Veney and Fister on or

around those dates."  Id.

Veney, for his part, bases his argument on the same

realization by the government witnesses with respect to the two

dates described above.  As he describes it, he now "will seek to

avoid the liability for at least these [two] trips by emphasizing

that for three years, from 2003 through 2006, the government

_____

[2] As noted at the parties' pretrial conference, the
government's alibi demand was just that: a demand that each
defendant provide the government with an alibi for particular
dates on which the government alleged that he took specific
action in furtherance of the conspiracy.  The alibi demand was
not a description of the evidence the government intends to offer
at trial, nor was it a bill of particulars.

witnesses said that Griffin was the person involved in these two
trips." Veney Motion to Sever ("Veney Mot.") at 2.

**IV.  The defendants were properly indicted together and should be
     tried together; no claimed defense rises to a level that
     requires severance.**

As discussed in the government's response to Griffin's
original motion to sever, the law strongly favors joint trials
for co-conspirators. Zafiro v. United States, 506 U.S. 534, 537
(1993). Under Fed. R. Crim. P. 14, "the court may grant a
severance of defendants" if the joinder, which was proper under
Rule 8(a), nonetheless prejudices a defendant.

In the First Circuit in particular, the general rule is that
"those who are indicted together should be tried together."
United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999)
(citation omitted). Defendants claiming antagonistic defenses
are entitled to severance "only where the conflict is so
prejudicial and the defenses are so irreconcilable that the jury
will unjustifiably infer that this conflict alone demonstrates
that both are guilty." United States v. Talavera, 668 F.2d 625,
630 (1st Cir. 1982). Severance therefore should be granted only
if a defendant can "demonstrate prejudice so pervasive that it
would be likely to effect a miscarriage of justice." DeLeon, 187
F.3d at 63 (citations omitted); see also United States v.
LiCausi, 167 F.3d 36, 49 (1999).

As the First Circuit has stated:

When several defendants are named in a

> unified indictment, there is a strong
> presumption that they should be tried
> together. [citations omitted].  To obtain a
> severance under such circumstances, a
> defendant must demonstrate extreme prejudice,
> such as by showing a 'serious risk that a
> joint trial would compromise a specific trial
> right,' or would 'prevent the jury from
> making a reliable judgment about guilt or
> innocence.'

United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996),

quoting Zafiro, 506 U.S. at 538-39; United States v. O'Bryant,

998 F.2d 21, 25 (1st Cir. 1993).

In conspiracy cases, severance is rarely granted.  E.g.,

United States v. Peña-Lora, 225 F.3d 17, 33 (1st Cir. 2000)

("[P]ersons who are indicted together should be tried together[,]

since this practice helps both to prevent inconsistent verdicts

and to conserve resources (judicial and prosecutorial).  Thus,

when multiple defendants are named in a single indictment, a

defendant who seeks a separate trial can ordinarily succeed in

obtaining one only by making a *strong showing of evident

prejudice*.  The hurdle is intentionally high...") (quoting United

States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995); noting

that "severance is especially disfavored in conspiracy cases")

(emphasis added in Peña-Lora); United States v. Brandon, 17 F.3d

409, 440 (1st Cir. 1994) ("In the context of conspiracy,

severance will rarely, if ever, be required") (citation omitted).

1.  **Nothing about Griffin's anticipated defenses requires severance.**

Griffin cites three arguments for severance: the loss of anticipated alibi evidence, planned impeachment of government witnesses, and phone records that are consistent with the government's anticipated proof (and, therefore, point at Veney for the January and March 2001 trips).  None of these meets the high standard set in the case law for severance.  "In order to gain a severance based on antagonistic defenses, 'the antagonism ... must be such that if the jury believes one defense, it is *compelled* to convict the other defendant." Peña-Lora, 225 F.3d at 33 (quoting United States v. Woods, 210 F.3d 70, 79 (1st Cir. 2000) (ellipsis and emphasis in original).  "Thus, for example, mere fingerpointing among codefendants – i.e., the familiar, 'he did it, not I' defense – normally is not a sufficient ground for severance." Id. (citing Zafiro, 506 U.S. at 538-39) (additional citations omitted).  "To obtain severance on the grounds of conflicting defenses, a defendant has to demonstrate that the defenses are so *irreconcilable* as to involve fundamental disagreement over *core and basic facts*." Id. at 34 (quoting United States v. Paradis, 802 F.2d 553, 561 (1st Cir. 1986) (emphasis added in Peña-Lora).

Here, there is no conflict of significance.  Griffin says that he will be able to prove that he was not involved with two drug-transporting trips that the government pins on Veney.  This

8

is not inconsistent with the government's case, nor adverse in any particular way to Veney.

Since the case was indicted, there have always been trips attributed to Griffin and trips attributed to Veney. That particular trips are now, after the receipt of additional evidence, attributed to Veney rather than Griffin does not render their defenses inconsistent. The phone evidence that Griffin plans to introduce is, presumably, the phone evidence provided by the government (unless it is additional evidence that Griffin has, but has not disclosed to the government). The government will introduce this evidence in support of its case. Griffin may emphasize it (though, as he is not alleged to have participated in these particular trips, it is not clear why he would do so), but this would be merely cumulative of the government's case, and not grounds for severance. See United States v. Smith, 46 F.3d 1223, 1229 (1st Cir. 1995) (in context of claimed Bruton error, defendant's evidence about codefendant co-conspirators' statements about ongoing conspiracy "merely cumulative of the government case" and "could not have produced Bruton error"); Peña-Lora, 225 F.3d at 34 (on plain error review, no error not to sever where one defendant's cross-examination "'basically a reaffirmation of the [government] witness's testimony [on direct],' neither adding to, nor subtracting from, government's case." [citation omitted]).

9

There is nothing in Griffin's proposed defense that points
the finger at Veney.  By saying "I wasn't there, I didn't do
those trips," Griffin in no way requires that the jury conclude
that Veney must have been there and must have taken the trips.
In the language of Peña-Lora, there is no "disagreement over core
and basic facts."  Griffin agrees with the government that he was
not involved in these two trips.  Nothing in that agreement
implicates Veney.  Compare, e.g., Zafiro, 506 U.S. at 535-541
(affirming denial of severance motion where two sets of two
defendants pointed fingers at each other over cocaine found in
box and in apartment; affirming use of limiting instructions to
cure possible prejudice).

### 2.    Nothing about Veney's anticipated defense requires severance.

As noted above, Veney's motion for severance is based on his
plan to cross-examine government witnesses, using their
inconsistent statements.  In so doing, he will not (apparently)
claim that Griffin was involved, or point the finger at Griffin
himself.  Instead, he will simply attack the credibility of
government witnesses.  There is nothing here that requires
severance from Griffin; indeed, Griffin (and Collado) may even
benefit from successful cross-examination by Veney on this
subject.  Veney's argument, like Griffin's, fails to rise to the
level required for severance in a conspiracy case.  The
anticipated defense does not set up a conflict with Griffin's

10

defense "so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Talavera, 668 F.2d at 630 (1st Cir. 1982).

**3.   Judicial economy mandates a joint trial.**

Judicial economy strongly weighs against severance.  The indictment in this case alleges one conspiracy involving four defendants, three of whom remain for trial.  As the Court has heard, there is significant overlap in the witness testimony against the three remaining defendants: three cooperating witnesses will testify about Veney and Griffin; two of the three will testify about Collado.  All three defendants were involved in a contemporaneous conspiracy.  Separate trials would result in the unnecessary duplication of witnesses and exhibits and cause the government to put on a substantial part of its case repeatedly, thus defeating the clear benefits of a joint trial. See United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997) ("There are obvious advantages in judicial economy to the joint trial of defendants accused of the joint commission of crimes.") (citations omitted).  As the Court is aware, the trial is scheduled to last five to six weeks and require the summons of hundreds of potential jurors.  Trying the defendants separately would not significantly shorten either trial, as the time period at issue and the scope, manner, and means of the alleged conspiracy would remain the same for any trial in this matter.

Doing so would merely double the resources expended by the Court and double the number of jurors required to try the defendants.

## CONCLUSION

Based on the facts and argument set forth above and filed herewith, as well as any presented at a hearing on this matter, the government submits that Griffin's, Veney's, and Collado's motions to sever should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:
/s/ Rachel E. Hershfang
RACHEL E. HERSHFANG
Assistant U.S. Attorney

Dated: January 23, 2007

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record the foregoing by filing it electronically this 23rd day of January, 2007.

/s/ Rachel E. Hershfang
RACHEL E. HERSHFANG
ASSISTANT UNITED STATES ATTORNEY